UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**JOSHUA ZIEMBOWICZ**,
individually and on behalf of all
others similarly situated,

       Plaintiff,

  v.

**NATIONAL GUNITE CO., INC.**,
and **STEVEN MILLIGAN**,

       Defendants.

Hon.
Case No.  2:18-cv-12561

COLLECTIVE ACTION
COMPLAINT AND JURY
DEMAND

## COLLECTIVE ACTION COMPLAINT

1.    Plaintiff and those similarly situated worked for Defendants' in-ground pool business performing hard manual labor, including digging holes for the pools by hand and shoveling concrete.  They often worked for many hours beyond the standard forty-hour work week, during the hottest months of the year, yet Defendants never paid them overtime premiums as required by law.

2.    As a matter of standard business practice, Defendants Steven Milligan and National Gunite Co., Inc., (respectively, "Milligan," and "National"; collectively, "Defendants") refuse to pay their hourly employees legal overtime premiums.  They willfully and repeatedly flout the Fair Labor Standards Act of 1938

("FLSA"), 29 U.S.C. § 201, *et seq.*, state and federal record-keeping requirements, and the contracts they enter with their employees—to their great profit and their employees' great detriment.

3. This is a collective FLSA action brought by one of the men injured by Defendants' wage violations and contractual breaches: Plaintiff Joshua Ziembowicz ("Plaintiff" or "Named Plaintiff"). He is suing on behalf of himself and all those similarly situated with respect to Defendants' wage practices.

## JURISDICTION AND VENUE

4. This Court has subject-matter jurisdiction over Plaintiff's FLSA claim pursuant to 28 U.S.C. § 1331 because it raises a federal question. A lawsuit for violation of 29 U.S.C. § 216(b) "may be maintained against any employer . . . in any Federal or State court of competent jurisdiction."

5. This Court has supplemental jurisdiction over Plaintiff's state-law claims pursuant to 28 U.S.C. § 1367 because they arise under the same facts as Plaintiff's FLSA claim.

6. This Court has personal jurisdiction over the Defendants because they each reside in and systematically conduct business in this District.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391(1) because all Defendants reside in this District; additionally, a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in this District.

## PARTIES

8.  Plaintiff Joshua Ziembowicz resides in Redford, Wayne County, Michigan.  From approximately May 2015 until May 2017, Plaintiff Ziembowicz worked for Defendants as an hourly employee, digging holes for in-ground pools, shoveling concrete, and performing other heavy manual labor.  Plaintiff Ziembowicz has executed his consent-to-sue form, attached as *Exhibit A*.

9.  Defendant National Gunite Co., Inc. ("National"), is a privately held Michigan for-profit corporation located in Southfield, Oakland County, Michigan.  Its registered address is 26460 West 8 Mile Road, Southfield, Michigan 48033.  Defendant Milligan is National's registered agent.

10.  Defendant Steven Milligan resides in Northville, Michigan, in Wayne or Oakland County.  Milligan owns and operates National Gunite Co., Inc., which sells and installs luxury in-ground swimming pools and spas for residential homes across Michigan and in neighboring states.

11.  Upon information and belief, Milligan currently is the lone officer and sole or controlling shareholder of National, but he may be in the process of transferring a controlling interest in National to another individual or entity.

12.  Plaintiff will amend the complaint if discovery should indicate that National and/or Milligan are functioning with any other individual or business entity as a common enterprise or joint employers of Plaintiff for purposes of the FLSA.

## **GENERAL ALLEGATIONS**

13. Plaintiff re-alleges all previous paragraphs and incorporates them here.

14. At all relevant times, Defendants were Plaintiff's employers.

15. Plaintiff Ziembowicz worked for Defendants approximately from May 2015 until May 2017. At hire, Defendant Milligan contracted with Plaintiff on behalf of Defendant National that National would pay a starting hourly rate of $18.00 for his labor. Later, near the end of 2015, Milligan gave Ziembowicz a raise to $20.00 per hour, to be effective in 2016.

16. As a matter of business operations, Defendants collected weekly time cards from each hourly employee, including Plaintiff. These time cards were small pieces of colored paper on which a hand-written form had been photocopied. The color of the time cards changed from time to time. Defendant Milligan instructed Plaintiff and similarly situated employees to write their start and end times for each day of the week on the time cards and submit them to Defendants by the next Wednesday in order to be paid two days later on Friday.

17. Defendants did not and do not issue legally compliant paystubs to employees, including Plaintiff. The non-compliant paystubs Defendants issue do not state the number of hours worked or hourly rate paid. Instead, they only list a total dollar amount for the week's pay and the deductions taken for taxes. *See* ***Exhibit B***, sample of Ziembowicz paystubs.

18. Upon information and belief, Defendants used the time cards submitted by their employees to calculate a total dollar amount that would be paid pursuant to Defendants' own formula. This formula does not include overtime premiums or comport with any recognized legal standard or their contractual agreements with employees, and it is not disclosed or explained to employees. Employees are left to cipher it out and wonder if they are being paid properly.

19. Under federal regulations, 29 C.F.R. § 516.2, Defendants are required to keep detailed records of their employees' hours worked and pay. These records are to be available for inspection and must include the following:

   a. "regular hourly rate of pay for any workweek in which overtime compensation is due under section 7(a) of the Act";

   b. an explanation of the "basis of pay by indicating the monetary amount paid on a per hour, per day, per week, per piece, commission on sales, or other basis";

   c. "hours worked each workday and total hours worked each workweek";

   d. "total daily or weekly straight-time earnings or wages due for hours worked during the workday or workweek, exclusive of premium overtime compensation"; and

   e. "total premium pay for overtime hours."

20. Under 29 C.F.R. § 516.5, these payroll records must be preserved for

5

at least three years.

21. Under Michigan's Payment of Wages and Fringe Benefits Act, an employer must keep records of each employee's hours and wages, including "total basic rate of pay [and] total hours worked in each pay period." Mich. Comp. Laws § 408.479(1). The employer "shall furnish each employee at the time of payment of wages a statement of the hours worked by the employee," and other required information. *Id.*, at (2). Defendants did not issue a legal paystub to employees, including Plaintiff, but instead omitted the statement of the hours worked and only stated total wages being paid.

22. Defendants' use of improper paystubs that omit hourly rates and hours worked is evidence of the willfulness and bad faith that motivate Defendants' unlawful pay practices.

23. Defendants deliberately processed National's payroll in this manner to obscure Defendants' overtime violations, to obscure Defendants' breaches of contracts with employees to pay a particular hourly wage and to act as lawful employers, and to make it more difficult for employees to take any legal action to obtain their lawful overtime premiums.

24. For example, in the workweek from March 18 to March 24, 2016, Plaintiff worked more than 40 hours but did not receive overtime pay. His paystub reflects only $1000.00 gross pay with no explanation. Plaintiff submitted a time

card for that workweek reflecting his actual hours worked, but he did not receive overtime premiums at the mandated rate.  ***Exhibit B***, at 4.

25.     As another example, in the workweek from March 25 to March 31, 2016, Plaintiff worked more than 40 hours but did not receive overtime pay.  His paystub reflects only $1060.00 gross pay with no explanation.  Plaintiff submitted a time card for that workweek reflecting his actual hours worked, but he did not receive overtime premiums at the mandated rate.  ***Exhibit B***, at 3.

26.     Because of Defendants' purposefully inscrutable paystubs, issued in furtherance of Defendants' plan to evade overtime laws, the overtime violations are not immediately apparent on the face of the paystubs, but they can be proven with the benefit of even minimal discovery.  Defendants are required by law to maintain records of the actual hours Plaintiff and other employees worked, so conclusive proof of Defendants' overtime violations will have to be gleaned from Defendants records in discovery—assuming, of course, that Defendants did not destroy or cause to be destroyed the time cards that Defendants' employees submitted.

27.     When Plaintiff Ziembowicz asked Defendant Milligan about the overtime pay missing from his checks, Milligan stated that National does not pay overtime premiums.

28.     Upon information and belief, Defendants committed these overtime and record-keeping violations deliberately against every hourly employee in every

7

pay period.

29. Defendants' violations invariably inured to Defendants' benefit.

30. As a result of Defendants' wage violations, Defendants systematically underpaid their hourly employees, including Plaintiff, during the relevant time period and were unjustly enriched by doing so.

31. Defendants' wage violations resulted in Plaintiff and those similarly situated being denied substantial compensation due for work performed for Defendants. This unpaid work is not *de minimis.*

## FLSA COLLECTIVE ACTION ALLEGATIONS

32. Plaintiff re-alleges all previous paragraphs and incorporates them here.

33. Plaintiff brings this Collective action pursuant to 29 U.S.C. § 216(b) of the FLSA on his own behalf and on behalf of all similarly situated current and former hourly employees of Defendants who worked over forty hours per week and did not receive compensation of one and one-half times their regular hourly rate.

34. The putative FLSA Collective is defined as:

> *All individuals who worked for National Gunite Co., Inc., as an hourly employee anytime in the three years preceding this Complaint's filing date.*

35. At all relevant times, Defendants required, suffered, and permitted Plaintiff and the putative Collective members to labor for Defendants' benefit and thus employed them within the meaning of the FLSA. 29 U.S.C. § 203(g).

36. The FLSA contemplates an employee having multiple "employers" for purposes of complying with the FLSA's minimum wage and overtime requirements. In addition to acting in his own behalf as an employer, Defendant Milligan acted directly or indirectly in the interest of employer National in relation to National's employees, including Plaintiff and those similarly situated, and thus is an "employer" pursuant to 29 U.S.C. § 203(d).

37. Defendants' annual revenues exceed $500,000.00, Defendants are engaged in commerce and in the production of goods for commerce, and Defendants employ more than two persons, so the FLSA applies in this case on an enterprise basis. 29 U.S.C. § 203(s).

38. Defendants' employees engage in production of goods for interstate commerce because they install, assemble, handle, transport, and otherwise work with materials, products, parts, and commodities that comprise in-ground pools and have traveled in interstate commerce. *See* 29 U.S.C. § 203 (i), (j) & (s). Thus, Plaintiff and putative Collective members are also covered by the FLSA on an individual basis.

39. Plaintiff and other putative Collective members frequently were required by Defendants to work over forty hours per week but did not receive overtime premiums.

40. Defendants issued the same purposefully inscrutable paystubs to all

members of the putative Collective, as they did to Plaintiff, to obscure their overtime violations and thwart any efforts by their employees to prove the violation.

41. Defendants knew Plaintiff and the putative Collective members frequently were working over forty hours per week because they assigned the jobs and hours and collected time cards from their employees reflecting the actual hours worked.

42. Defendants knew or should have known that all employees' hourly work over forty hours per week was compensable at the rate of one and one-half times their regular hourly rate under the FLSA.

43. Defendants' FLSA violations were knowing and willful such that the statute of limitations should equal the maximum period of three years, pursuant to 29 U.S.C. § 255(a).

44. Defendants' FLSA violations were not good-faith errors but a purposeful choice of business practice and procedure, devised and implemented by Milligan and knowingly adopted, approved, and ratified by National to increase the profits each Defendant would realize and gain an unfair advantage over competitors in the industry who comply with overtime laws.  Accordingly, a full award of liquidated damages is appropriate under the FLSA.  29 U.S.C. §§ 216(b) & 260.

45. A collective action under the FLSA is appropriate because, under 29 U.S.C. § 216(b), the Named Plaintiff is "similarly situated" to the members of the

putative Collective in that they were hourly employees of Defendants at some time in the past three years, were employed in similar hourly positions as hourly laborers, and were subjected to Defendants' policy, plan, and practice of denying proper overtime compensation and obscuring the overtime violation with incomplete paystubs. Furthermore, the claims of the Named Plaintiff and the claims of the putative Collective members are based upon similar facts and the same legal theories.

46. The employment relationships between Defendants and every putative Collective member are the same and differ only in name, location, exact job duties, and rate of pay. The key legal issue in the collective action—whether Defendants' policy and practice of not paying overtime premiums violates the FLSA—does not vary substantially from member to member and can be determined based on common evidence.

## COUNT 1
**Violation of the Fair Labor Standards Act
29 U.S.C. § 201, *et seq*.
Failure to Pay Overtime
(Collective Action)**

47. Plaintiff re-alleges all previous paragraphs and incorporates them here.

48. The FLSA requires an employer to pay employees an overtime premium rate of one and one-half times their regular rate of pay for every hour worked in excess of forty hours per workweek.

49. As detailed above, at all times relevant to this action, Defendants failed to pay Plaintiff and the putative Collective members overtime compensation at a rate of one-and-one-half times their regular hourly rate for all overtime work performed. 29 U.S.C. § 207.

50. Plaintiff and other putative Collective members, by virtue of their job duties and activities actually performed, are all non-exempt employees.

51. Defendants' violations of the FLSA were knowing and willful. In fact, Defendant Milligan stated to Plaintiff and other putative Collective members that National does not pay overtime.

52. Defendants knew exactly how long Plaintiff and each putative Collective member actually worked based on the hourly time cards Defendants distributed to and collected from their employees. Defendants could have properly compensated Plaintiff and those similarly situated for all this time but did not. Defendants instead required Plaintiff and those similarly situated to work over forty hours per week and failed to properly compensate them for the overtime.

53. As remedy for a violation of the Act, Plaintiff and the putative Collective members seek their unpaid overtime plus an additional equal amount in liquidated damages, costs, and reasonable attorneys' fees, as provided by law.

## COUNT 2
**Breach of Contract**

54. Plaintiff re-alleges all previous paragraphs and incorporates them here.

55. This Count is brought individually by Plaintiff, who may amend this Count to bring it on a class basis if discovery should show that those similarly situated are sufficiently numerous to satisfy Federal Rule of Civil Procedure 23.

56. At all times relevant to this action, Defendants had a contract with Plaintiff to pay for each hour he worked at a pre-established contractual rate. From hire until the end of 2015, the rate was $18.00 per hour; beginning in 2016, the rate was to be $20.00 per hour.

57. At all relevant times, there was also an implied contract between Defendants and Plaintiff that Defendants would act as lawful employers.

58. Plaintiff performed under the contract by working for Defendants and carrying out the labor that Defendants assigned him.

59. Defendants did not always pay the promised and agreed-upon hourly rates. Plaintiff's hourly rate seemed to vary without notice, and the promised raise never materialized, or at least not consistently.

60. By not paying Plaintiff the agreed-upon hourly wage plus all legally required overtime premiums for all time worked in each shift, Defendants breached their contract with Plaintiff.

61. As a direct and proximate result of Defendants' breach of the contract alleged here, Plaintiff was injured and seeks damages in an amount to be determined at trial.

## COUNT 3
### Unjust Enrichment/*Quantum Meruit*

62. Plaintiff re-alleges all previous paragraphs and incorporates them here.

63. This Count is brought individually by Plaintiff, who may amend this Count to bring it on a class basis if discovery should show that those similarly situated are sufficiently numerous to satisfy the requirements of Federal Rule of Civil Procedure 23.

64. At all times relevant to this action, Plaintiff conferred a benefit on Defendants because Plaintiff performed valuable labor for Defendants.

65. At all times relevant to this action, Defendants knowingly and voluntarily accepted and retained the benefit of Plaintiff's labor, including the labor he performed beyond forty hours in a workweek.

66. Defendants refused to pay Plaintiff overtime premiums as per industry standard and applicable law. As a result, Plaintiff was not paid the fair value of his labor.

67. Defendants have been unjustly enriched by Plaintiff's underpaid overtime labors. In addition to injuring Plaintiff, Defendants' practice of failing to pay overtime premiums as per industry standard and applicable law gives Defendants an unfair advantage over competitors in the industry who act as lawful employers and pay the mandated overtime premiums.

68. Allowing the Defendants to maintain the benefit of Plaintiff's

14

undercompensated labor is inequitable. Justice demands that Defendants be ordered to disgorge these ill-gotten benefits in the form of restitution to Plaintiff in an amount to be determined at trial.

### COUNT 4
### Promissory Estoppel

69. Plaintiff re-alleges all previous paragraphs and incorporates them here.

70. This Count is brought individually by Plaintiff, who may amend this Count to bring it on a class basis if discovery should show that those similarly situated are sufficiently numerous to satisfy Federal Rule of Civil Procedure 23.

71. Defendants, through Defendant Milligan, promised Plaintiff $18.00 per hour base wages to start and $20.00 per hour base wages beginning in 2016.

72. Defendants made the wage promises because they intended and expected Plaintiff to rely on the promises and thereby be induced to labor, and continue laboring, for Defendants' benefit.

73. Defendants' wage promises actually induced Plaintiff to labor, and continue laboring, in reliance on the wage promises for Defendants' benefit at Plaintiff's detriment.

74. Plaintiff's reliance on the Defendants' wage promises was reasonable because people commonly expect to be paid for their work as promised by their employers and know from common experience that they must work to be paid.

75. Plaintiff would suffer injustice if the promise is not enforced.

76.     Plaintiff seeks damages in the amount of the difference between the promised hourly base wages (including overtime premiums on the promised rate) and what was actually paid.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests the following relief:

A.  Certification of this case as a collective action under 29 U.S.C. § 216(b) with respect to the FLSA claim in Count 1;

B.  An order (1) directing the Defendant to disclose in computer format, or in print if no computer-readable format is available, the names and addresses of all those individuals who are situated similarly to the Named Plaintiff; (2) permitting Named Plaintiff to send and publish notice of this action to those individuals in a manner that is reasonably calculated to apprise them of their rights under this litigation; and (3) requiring Defendants to pay the cost of notice;

C.  Designation of Named Plaintiff as Representative of those similarly situated;

D.  Judgment in favor of Plaintiff and the Collective for Defendants' willful and bad-faith violations of the FLSA as set forth in Count 1;

E.  Award to Plaintiff and each Collective member the full amount of his unpaid overtime wages along with an equal amount as liquidated

        damages, 29 U.S.C. § 216(b);

F.     Award Plaintiff and the Collective the costs of this action, *id.*;

G.     Award Plaintiff and the Collective their reasonable attorney fees, *id.*;

H.     Judgment in favor of Plaintiff on the state-law claims brought in Counts 2, 3, and 4;

I.     An order directing Defendants to pay pre- and post-judgment interest to Plaintiff and putative Collective members on their damages; and

J.     Any further relief the Court may deem just or equitable.

## **JURY DEMAND**

Plaintiff demands a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure and applicable court rules and statutes.

Dated: August 16, 2018

                                    Respectfully submitted,

                                    /s/ *Amy Marino*
                                    Amy Marino (P76998)
                                    MARINO LAW PLLC
                                    18977 W. Ten Mile Rd., Ste. 100E
                                    Southfield, MI 48075
                                    (248) 797-9944
                                    amy@marinopllc.com

                                    *Attorney for Plaintiff and the Putative Collective*